Timothy J. Carlstedt (tcarlstedt@huntonak.com)
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, CA 94111
Tel.: (415) 975-3700
Fax: (415) 975-3701

Edward T. Colbert (ecolbert@huntonak.com)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 955-1500
Fax: (202) 778-2201

*Counsel for Constellation Brands U.S. Operations, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSTELLATION BRANDS U.S. OPERATIONS, INC., a New York corporation, *Plaintiff*, v. THE VINEYARD HOUSE, LLC, a California limited liability company, *Defendant*. | Case No.: 4:20-cv-00238-YGR **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiff, Constellation Brands U.S. Operations, Inc., submits this reply in support of its motion for an order preliminarily enjoining Defendant, The Vineyard House, LLC, from offering or selling wine products that use Constellation's TO KALON trademark in any way until trial is held, including use of "H.W. CRABB'S TO-KALON VINEYARD" on Defendant's "Block 8" wine. As will be discussed, Defendant still does not appreciate what it means for a mark to be "incontestable" or what is required to show "geographic descriptiveness," and it further fails to demonstrate entitlement to claim "fair use." The pending motion should still be granted.

**REPLY ARGUMENT**

In its opening brief, Constellation Brands explained why this motion presents an easy case. The parties are using the same mark in the same way with the same type of goods. *See* ECF 5 ("*Pl. Mem.*"), pp. 6-19.[1] Confusion is thus inevitable, *see, e.g., Brookfield Comm., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017), and as between the parties, it is Constellation that has the superior (and incontestable) right to use the TO KALON VINEYARD name. *See* ECF 5-3, pp. 1-4; 15 U.S.C. § 1115(b). Therefore, Defendant's new use, which if allowed would cause Constellation irreparable harm (*see Pl. Mem.*, pp. 19-22), should be preliminarily enjoined.

In its opposition brief, Defendant ignores these basic points and instead relies on the failed argument it raised in its declaration judgment action—namely, that Constellation *shouldn't* have the exclusive and incontestable right to use TO KALON VINEYARD because the phrase is "geographic." Notably though (and as will be discussed), Defendant does not discuss *the law* pertaining to "incontestability" or "geographic descriptiveness." It just repeats the claim that "To Kalon" supposedly is a geographic identifier over and over again, *see, e.g.,* ECF 18 ("*Def. Opp.*"), pp. 1, 2, 4, 5, 6, 8, 9, 10, 11, 13, 15, 18, evidently hoping sheer persistence wins out.

The law, however, matters, and under the law, Defendant's argument is a non-starter. Defendant is precluded by incontestability (15 U.S.C. § 1115(b)) from claiming that "To Kalon" *was* "geographic" when Constellation adopted it as a mark, and it has not shown that the primary significance of TO KALON *today* is anything other than a brand.[2] *Cf. Trademark Manual of Examining Procedure* ("*TMEP*"), § 1210.02(b) (Oct. 2018) (for a mark to be geographically descriptive, "its primary significance to the relevant consumers …. [must] be that of a geographic location," rather than a brand). And once Defendant is denied its "geographic" argument—which it bears the burden of proving, even at the preliminary injunction stage; *see Perfect 10, Inc. v.*

---

[1] Cites to the parties' briefs are to the page numbers in the documents rather than ECF pagination.

[2] Defendant is also wrong on the historic facts, as Constellation demonstrated in the declaratory judgment action. From the start, TO KALON was adopted, used, and registered **as a brand**; it was never meant to identify (nor was it restricted to) a specific geographic place. *See generally* ECF 62, pp. 2-12 (Case No. 4:19-CV-1424-YGR) (citing factual support).

1  *Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007)—it has no defense. It cannot get around that it chose to use Constellation's registered trademark in the same way, and for the same goods, as Constellation. That is classic trademark infringement, and ignoring it, *see Def. Opp.*, p. 11 (wrongly suggesting that confusion that arises from two parties' use of the same mark somehow "isn't trademark confusion"); *but see* 15 U.S.C. § 1125(a), does not change anything.

**A.   Defendant Admits That its Use of TO-KALON VINEYARD Will Lead Consumers to Believe That its Grapes Come from that Named Source**

At the start of its brief, Defendant ostensibly responds on the issue of infringement by arguing that because it uses a "house mark," consumers will not accidentally purchase its "Block 8" wine believing it was made by Constellation. *See Def. Opp.*, pp. 1-11. This case, however, is not about mistaken purchases (*i.e.*, buying one product while thinking you are buying a different one). Rather, Constellation's primary concern is preventing consumer confusion as to **association**—here, the mistaken belief that Defendant's "Block 8" wine is made using grapes that come from the same source Constellation and its licensees use for genuine TO KALON VINEYARD wine. *See Pl. Mem.*, pp. 9-10, 16; *see also* 15 U.S.C. § 1125(a). And as to that form of confusion, the inclusion of a house mark does absolutely nothing to mitigate the potential for consumer harm. *See A.J. Canfield Co. v. Vess Beverages, Inc.*, 612 F. Supp. 1081, 1086-87 (N.D. Ill. 1985) (consumers were more likely to believe that defendant's products, which featured a house mark in addition to plaintiff's mark, were affiliated with plaintiff where plaintiff licensed others to use its mark with their own house marks); *aff'd*, 796 F.2d 903 (7th Cir. 1986); *see also H-D U.S.A., LLC. v. SunFrong, LLC*, 311 F. Supp.3d 1000, 1031 (E.D. Wisc. 2018); *Maker's Mark Distillery, Inc. v. Diageo North Am., Inc.*, 679 F.3d 410, 422 (6th Cir. 2012).

Far from disputing the likelihood of this "association" confusion, Defendant <u>admits</u> that simultaneous use of "To Kalon Vineyard" by it and Constellation will cause consumers to believe mistakenly that the parties' grapes **are from the same source**. *See Def. Opp.*, p. 2 ("[C]onsumers understand that the name of a specific vineyard on a bottle's front label is a vineyard designation that describes the origin of the grapes used to make the wine[.]"). Defendant, however, does not consider that an *infringement* because it thinks that vineyard names cannot be protected as brands.

*See, e.g., Def. Opp.*, pp. 1, 2, 4-5, 6.  But that is just wrong.  The Trademark Office has granted *dozens* of trademark registrations to protect proprietary vineyard names that are used in the same way Defendant claims is only "geographic."  *See Declaration of Jeremy Glasser*, ¶¶ 1-24, Exs. A(1)-(24); *cf. Def. Opp.*, p. 4.  And those registered "vineyard" brands are not restricted by metes and bounds—they identify whatever source the brand owner chooses to associate with the name.

Therefore, by putting "To-Kalon Vineyard" on the label of its wine, Defendant is telling consumers that its grapes come from the same source that Constellation (which likewise puts "To Kalon Vineyard" on its labels) uses for *its* wines, *see Def. Opp.*, p. 2, and that is objectively not true.  The rub of this case is that Defendant has never accepted that Constellation—by virtue of its incontestable TO KALON VINEYARD registration and long use—**has the exclusive right** to use the "To Kalon Vineyard" name, no matter how much Defendant may want to use it itself.  Defendant's refusal to accept reality, though, does not change the merits of the case.

**B.     Defendant Continues to Ignore the Doctrine of Incontestability**

As noted above, Defendant repeatedly claims that "To Kalon Vineyard," when used with wine, is "geographically descriptive," and supposedly has been since before Constellation adopted it in the mid-1980s.  *See, e.g., Def. Opp.*, p. 1 (claiming the mark was "geographically and historically descriptive" when adopted).   That argument is factually wrong, *see* ECF 62, pp. 2-12 (Case No. 4:19-CV-1424-YGR); *see also, e.g.,* ECF 5-3, pp. 66-67, 416-28 (¶¶ 32-46); ECF 5-4, p. 2 (¶¶ 4-6), but more important it is *legally foreclosed* by the doctrine of incontestability.

When it granted the TO KALON and TO KALON VINEYARD registrations, the Trademark Office found the marks "inherently distinctive"—which is to say, <u>not</u> "descriptive" ("geographically" or otherwise).  *See* ECF 5-3, pp. 126-27, 224-25; *see also Zobmondo Enter., LLC v. Falls Media LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010); *cf.* 15 U.S.C. §§ 1052(e), (f).  Consequently, because those registrations are now incontestable, *see* ECF 5-3, pp. 82, 176-77, 190, 219; 15 U.S.C. § 1065, the validity of the registrations (and thus the propriety of the Office's underlying findings) cannot be challenged **as a matter of law**.  *See* 15 U.S.C. § 1115(b) (an incontestable registration is "conclusive evidence of the validity of … the registration of the mark"); *see also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 193-201 (1985).

Tellingly, Defendant does not mention the incontestability of Constellation's TO KALON VINEYARD registration once in its brief or discuss how it impacts this case. Instead, Defendant just collaterally attacks the validity of the Office's determination and seeks to relitigate whether the mark was "descriptive" when adopted. *See Def. Opp.*, pp. 1, 9, 11 (suggesting Constellation "adopt[ed] a descriptive term"). However, that is not how the law works, *e.g., Park 'N Fly*, 469 at 198 (incontestability "provide[s] a means for the registrant to quiet title in the ownership of his mark"), and ignoring the inconvenient elephant in the room does not mean it no longer exists.

**C.   Defendant Fails to Establish Even a Colorable Claim of "Fair Use"**

Because TO KALON VINEYARD must be deemed properly registered and thus not "geographically descriptive" when adopted, *see supra*, Defendant really has no response to the infringement claim. The entire structure of Defendant's brief is based upon the foreclosed fiction that "To Kalon Vineyard" supposedly was always an identifiable "geographic place."

Nonetheless, the Lanham Act *does* offer a party a narrow defense to a claim of infringement of an incontestable mark (15 U.S.C. § 1115(b)(4)), a statutory protection Defendant intones but fails to analyze in a systematic way. Defendant glosses over (or outright skips) the core elements of the defense, *see Def. Opp.*, pp. 15-16, and does not account for its burden of proof. Under a proper analysis, Defendant cannot possibly find shelter here.

**1.   Defendant Uses TO-KALON VINEYARD as a Mark**

The first requirement of the "fair use" defense is that the use a party seeks to exclude from a claim of infringement must be "otherwise than as a mark." 15 U.SC. § 1115(b)(4). A phrase functions as a trademark if it is used to "identify and distinguish" a party's goods from those sold by others and to indicate source. *See id*, § 1127; *see also TMEP*, § 1202. Therefore, to carry its burden on this initial element, Defendant must prove that when consumers see H.W. CRABB'S TO KALON VINEYARD on its bottles, they will not view it as distinguishing Defendant's wines from those of others, but instead will consider it either a common phrase in ordinary use or as merely conveying general information about the product. *See TMEP*, §§ 1202, 1202.04.

Under that standard, Defendant's argument that putting H.W. CRABB'S TO KALON VINEYARD on the front labels of its wines would not be seen as a distinguishing the product

from those made by others is frivolous.  The Trademark Office **has repeatedly found** that putting the name of a vineyard on a label is *a trademark use*, such as in the examples below:

**CALARCADIA VINEYARD**    **SAGE VINEYARD**    **LANDA VINEYARD**

        

**HAYSTACK VINEYARD**    **MARTHA STELLING VINEYARD**    **GAMBLE RANCH VINEYARD**

        

*See Glasser Decl.*, Exs. A(1)-(24); *see also Declaration of Robert Cissel*, ¶¶ 1-10.  Furthermore, *this Court* has held that putting a vineyard name ["Meeker Vineyard"], even "in small letters," on the front of a wine label [shown below] "to state where the grapes used for that particular wine were grown" is "**the very essence of use as a mark**" and thus cannot be a "fair use":



*See Meeker v. Meeker*, 2004 WL 2457793, *8, 10 (N.D. Cal. 2004); *Supplemental Declaration of Armin Ghiam*, ¶ 2, Ex. 1 (attaching exhibit ["M. Meeker Decl., Exh. B"] the court referenced).

In addition to all that, it should be also noted that *Defendant* is seeking to register several "vineyard designations" **as marks**, *see Ghiam Supp. Decl.*, ¶¶ 3-9, Exs. 2-8, including for a use indistinguishable from how Defendant uses H.W. CRABB'S TO-KALON VINEYARD today:

| H.W. CRABB'S TO-KALON VALLEY VINEYARD (U.S. Serial No. 88009715) | H.W. CRABB'S TO-KALON VINEYARD (Current Use) |
|---|---|



*Compare* ECF 5-3, pp. 300-303, 307[3] *with id.*, p. 6 (graphic taken from *Def. Opp.*, p. 2).

Defendant has put forth no evidence that would support a finding that it is using the phrase H.W. CRABB'S TO-KALON VINEYARD "otherwise than as a mark," *cf.* 15 U.S.C. § 1115(b)(4), let alone to carry its burden of proof. *Cf. Perfect 10*, 508 F.3d at 1158 (the party that seeks to rely on an affirmative defense in opposition to a motion for a preliminary injunction must show "a likelihood that its affirmative defense will succeed"). Defendant unquestionably is using

---

[3] Because Defendant filed Serial No. 88009715 based on an "intent to use," it was not required to provide a specimen showing use. *See TMEP*, § 806.01(b). Defendant *was*, however, required to have a *bona fide* intent to use the mark, *see id.*, and *the day after* it filed its trademark application, Defendant asked the Treasury Department to approve the above label (including the H.W. CRABB'S TO-KALON VALLEY VINEYARD designation) for use. *See* ECF 5-3, pp. 305-307.

H.W. CRABB'S TO-KALON VINEYARD as a brand. *Accord* ECF 5-3, pp. 482- 86 (¶¶ 11-20); *see also Cissel Decl.*, ¶ 11. As such, it cannot rely on a litigation-inspired claim of fair use (*cf.* ECF 5-3, pp. 300-303, 307) to try to justify its continued infringement.

### 2. Defendant Cannot Show That TO KALON VINEYARD is Geographic

The second requirement of the "fair use" defense (assuming the subject use is "otherwise than as a mark") is that the phrase in question must be "descriptive of … the goods or services of [the] party, or their geographic origin." 15 U.S.C. § 1115(b)(4).[4] Defendant claims that TO KALON VINEYARD is "geographically descriptive." *See Def. Opp.*, pp. 10, 13. At no point, though, does Defendant discuss what it must show to *establish* geographic descriptiveness.

For a mark to be geographically descriptive, "its *primary significance* to the relevant consumers … [must] be that of a geographic location," rather than a brand. *TMEP*, § 1210.02(b) (emphasis added); *cf. In re Cotter & Co.,* 228 USPQ 202, 205-06 (TTAB 1985). Furthermore, just because a mark (*e.g.*, DISNEYLAND, KNOTT'S BERRY FARM) identifies a place with a fixed, physical location does not make it geographic. *Accord In re Pebble Beach Co.*, 19 USPQ 2d. 1687, 1688 (TTAB 1991) ("If that were so, the name of literally every retail store or restaurant would be primarily geographically descriptive, since the public would associate the name with the physical place where the services were rendered or the goods sold.").[5]

Defendant, however, offers no evidence (such as a survey) that consumers today primarily consider TO KALON VINEYARD to identify a specific geographic location (let alone a location that includes *Defendant's* land) rather than as functioning as a brand. Furthermore, the supposed anecdotal evidence of "Third Party Use" on which Defendant repeatedly relies (both in response to the claim of infringement and in support of its "geographic" defense; *see Def. Opp.*, pp. 4-5, 9-

---

[4] The Lanham Act also imposes a further requirement of "good faith." 15 U.S.C. § 1115(b)(4). However, given that Defendant fails to meet either of the objective elements, it is not necessary to consider the subjective element of the defense. *But see Pl. Mem.*, pp. 17-18 (discussing "intent").

[5] Furthermore, even if the primary significance of a mark is a geographic location (rather than the name of the business operating there), if that location is so obscure that the average consumer for the goods (here, wine) would not recognize it "as an indication of the geographic source," the mark would still not be geographically descriptive. See *TMEP*, § 1210.04(c); *see also In re Societe Generale des Eaux Minerales de Vittel, S.A.*, 824 F.2d 957, 959-60 (Fed. Cir. 1987).

1    10, 13-15) is both irrelevant and inapposite. Each of the "third parties" identified by Defendant

2    (including Mr. Beckstoffer) is actually **a licensed user of the TO KALON VINEYARD mark**.

3    *See Cadamatre Decl.*, ¶ 14; *see also id.*, ¶¶ 12-13, 15. Thus, far from weakening Constellation's

4    trademark rights, these additional authorized, high-quality uses strengthen Constellation's claims,

5    including that consumers (who are accustomed to seeing the TO KALON VINEYARD brand

6    used with a variety of different "house marks," such as SCHRADER, PAUL HOBBS, ROBERT

7    MONDAVI, etc.; *see. Pl. Mem.*, p. 9) would be more likely to believe that Defendant is *also* a

8    licensee, *see* pp. 2-3, *supra*, which is precisely the "association" harm Constellation fears.

9    **D.   Constellation Has Shown That It Will Suffer Irreparable Harm**

10   Defendant is also wrong when it suggests that Constellation failed to show it will suffer

11   irreparable harm. Constellation put on direct evidence—including testimony from *Defendant's*

12   *principal*—that Defendant's product **will not taste the same** as wine made by Constellation. *See*

13   *Pl. Mem.*, pp. 19-22 (citing evidence).[6] Constellation also offered proof that Defendant's wines

14   are generally rated *much lower* that Constellation's TO KALON offerings, *see* ECF 5-6, pp. 7-8

15   (¶¶ 18-20); ECF 5-10, meaning many consumers who drink Defendant's wine will consider it

16   inferior and be left with a lesser opinion of the quality of TO KALON wines in general. *See id*

17   It is not clear what further proof is even possible in circumstances where (such as here)

18   the plaintiff acted swiftly and moved for a preliminary injunction before the defendant made any

19   sales. Each of the examples Defendant provides—such as "price erosion," "loss of market share,"

20   "loss of a market-leading position," *see Def. Opp.*, p. 17—can only occur *after* an infringing

---

[6] Although Defendant's expert subjectively disputes the importance (and existence) of uniform flavor profiles, he does not dispute the *objective* fact that the parties' lands—which differ fundamentally in terms of soil, elevation, slope, microclimate, etc.—inherently produce *differently flavored* grapes. *See* ECF No. 18-1; *cf.* ECF 5-6, pp. 4-7 (¶¶ 9-17); *Declaration of Nova Cadamatre*, ¶¶5-11 (distinguishing between "mountain" and "valley" fruits). In contrast, all genuine TO KALON wines—whether produced by Constellation or from grapes grown by Constellation's licensee (Mr. Beckstoffer)—**are from grapes that exhibit a similar "structure"** because they were grown on land that shares "very similar, if not identical, soil characteristics and solar exposure." *See Cadamatre Decl.*, ¶¶ 12-15 (explaining that Constellation's and Mr. Beckstoffer's lands "sit[] on the same alluvial fan and enjoy[] the same orientation, soil type, and inherent qualities imparted to the grapes grown (*e.g.*, low pH and high tannin").

product has been in the marketplace for a time, and no court has ever suggested that it is necessary for a party to suffer *actual* harm before moving for prospective equitable relief.

Although Defendant *argues* that quality-independent differences in gourmet food products (such as wine) should not support a finding of irreparable harm, *see Def. Opp.*, pp. 17-18, it does not dispute that there will be noticeable differences. Therefore, if the Court agrees that "loss of control over business reputation" includes situations where the defendant uses *the same mark* as plaintiff to sell *the same product* but does so outside of plaintiff's control (thereby leading to *noticeable differences*, especially in high-end products), it can and should find that Constellation has established a likelihood of irreparable harm. *Cf. 2Die4Kourt v. Hillair Capital Mgmt., LLC*, 692 Fed. Appx. 366, 369 (9th Cir. 2017) ("[E]vidence showing that [defendant] used [plaintiff's] trademarks after the termination of the [license agreement] to release an unapproved line of cosmetics products … is enough to support a finding, at this early stage, that the [plaintiff] likely will lose some measure of control over [its] business reputation in the absence of injunctive relief.") (unpublished). Again, the *facts* are not in dispute, just their legal implications.

In addition, the evidence already establishes that Defendant's wines are generally **rated lower** than Constellation's products, and that consumers would therefore perceive them as being of a lower quality.[7]  *See* ECF 5-6, pp. 7-8 (¶¶ 18-20); ECF 5-10 (over an eight-year period, Defendant's wines "averaged a rating below 90 points," whereas Constellation TO KALON VINEYARD wines "averaged well above 90 points, with scores as high as 96 points"). And Defendant admits that showing there is a risk that consumers will form a "negative impression" of the trademark owner's branded product after encountering the defendant's infringing goods is separately sufficient to prove up the likelihood of an irreparable harm.  *See Def. Opp.*, p. 17. Therefore, under either method of showing harm, Constellation has carried it burden.

---

[7] Because Defendant's "Block 8" wine has not yet been sold into the market, it has not been rated. Still, one would expect that because it is produced from the same grapes Defendant used for its "unbranded" Cabernet Sauvignons, it would receive a roughly similar "high 80s" rating.

### E. The Equities Overwhelmingly Favor Constellation

In the end, this is a case where Defendant *knew* that Constellation owned an incontestable and registered trademark, represented in discovery that it would not use the mark until its "fair use" challenge was resolved, but then *surreptitiously launched* its product into the market (and then a week later told everyone that it had not yet begun to use the mark). *See Pl. Mem.*, pp. 1, 22-23; ECF 5-3, pp. 326, 547-50. This is also a case where Defendant *knowingly chose* to use the same mark to sell the same goods to the same consumers, *see Pl. Mem.*, pp. 7-12, 17-18, and where Defendant did so *knowing* that the right to use the TO KALON name was "valuable," that wine branded with that designation would be "immediately recognized" by consumers, and that using the name would allow Defendant to market its wines "at a higher price point" that its goods would otherwise merit. *See* ECF 5-3, p. 499 (¶¶ 5-6); *see also id.*, pp. 503- (¶¶ 14-18), 510-16.

That is the equitable situation here, and Constellation respectfully submits that on balance, the equities tilt overwhelming in Constellation's favor. This is not a case where the defendant accidently stumbled into infringement; Defendant planned this. Until this case can be heard in full, the pre-litigation *status quo* should be preserved and Defendant should be enjoined from selling TO KALON-branded wine products and harming the goodwill of Constellation's brand.

### CONCLUSION

For the reasons set for above and in its opening brief, Constellation respectfully requests that Defendant be preliminary enjoined until trial from selling any wine that includes any form of the TO KALON name, including as used with its "Block 8" wine.

Dated:  January 29, 2020    By: /s/ Timothy J. Carlstedt_____
Timothy J. Carlstedt
HUNTON ANDREWS KURTH LLP
50 California Street; Suite 1700
San Francisco, CA 94111
Tel.: (415) 975 – 3700
Fax: (415) 975 – 3701
Email: tcarlstedt@huntonak.com

*Counsel for Plaintiff,
Constellation Brands U.S. Operations, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated: January 29, 2020                    By:    /s/   Timothy J. Carlstedt