BUCHALTER
A Professional Corporation
GLENN P. ZWANG (SBN:  112295)
JEFFREY M. JUDD (SBN:  136358)
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Telephone: 415.227-0900
Fax: 415.227.0770
Email:      gzwang@buchalter.com
                 pbertrand@buchalter.com
                 jjudd@buchalter.com

BUCHALTER
A Professional Corporation
WILLMORE F. HOLBROW (169688)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: 213.891.0700
Fax:  213/896/0400
Email:      wholbrow@buchalter.com

Attorneys for Plaintiff
THE VINEYARD HOUSE, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| CONSTELLATION BRANDS U.S. OPERATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE VINEYARD HOUSE, LLC,<br><br>Defendant. | Case No. 3:20-cv-0238-YGR<br><br>**DEFENDANT THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing: January 31, 2020<br>Time:      2:00 P.M.<br>Ctrm.:    1 – 4th Floor<br>Judge:    Hon. Yvonne Gonzalez Rogers |

Defendant The Vineyard House, LLC ("TVH") submits this Opposition to the Motion for Preliminary Injunction, dated January 10, 2020 (the "PI Motion").

## INTRODUCTION

In this infringement action, plaintiff Constellation Brands U.S. Operations, Inc. ("CBUSO") asks the court to accept the premise that the owner of a registered trademark has the unqualified, exclusive right to control the use and meaning of the registered word or phrase. Thus, CBUSO asserts, the court should ignore that "To Kalon Vineyard" and "To Kalon" have geographic and historical significance, and prevent TVH from selling wine with labels that accurately uses "To Kalon Vineyard" to describe the geographic and historical origin of the TVH wine inside the bottle. Both the premise and the conclusion are false: The fair use doctrine "forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco, Inc.* v. *Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir. 1980). The fair use doctrine thus provides TVH the legal right to use the "To Kalon Vindeyard" mark to accurately describe the geographic origin or historical significance of its wines. Indeed, CBUSO assumed the risk that others will use the mark to fairly describe the origin of their products when it adopted the geographically and historically descriptive marks "To Kalon" and "To Kalon Vineyard."

To prevail on the PI Motion, CBUSO must prove that the label on TVH's To Kalon Vineyard-labeled wine – the TVH Block 8 Cabernet Sauvignon (the "Block 8 Cab"), shown below – is likely to cause consumers to confuse CBUSO's To Kalon Vineyard-labeled wines with TVH's Block 8 Cab." *See* ECF 1 (Complaint, ¶ 64, at p. 13, ll. 24-28). But in its consumer confusion analysis CBUSO simply ignores that TVH's primary brand – "**THE VINEYARD HOUSE**" – dominates the front of the Block 8 Cab label, eliminating the theoretical concern that consumers might somehow associate TVH's  Block 8 Cab with CBUSO.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 39297293v1

**THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

**BLOCK 8 CAB FRONT LABEL**     **BLOCK 8 CAB BACK LABEL**







In addition to the "fair use" bar to CBUSO's claim, CBUSO fails to carry its burden of proof to establish a trademark violation. CBUSO argues that the "To Kalon Vineyard" mark is the primary brand of To Kalon Vineyard-labeled wines. The "To Kalon Vineyard" mark is, however, an ancillary brand that over 20 vintners use to describe the geographic source of their wine. Moreover, in the world of wine and wine marketing, consumers understand that the name of a specific vineyard on a bottle's front label is a vineyard designation that describes the origin of the grapes used to make the wine in the bottle. A vineyard designation is thus not a primary brand, even if the name of the vineyard has been registered as a trademark.

Finally, CBUSO has failed to proffer the admissible evidence required to establish "irreparable harm" under *Herb Reed. Enter., LLC v. Florida Entm't Mgmt., Inc.,* 736 F.3d 1239 (9th Cir. 2013) (reversing trial court order granting preliminary injunction that was based on

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 39297293v1

**PLAINTIFF THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

"unsupported conclusory statements regarding harm [the plaintiff] *might* suffer.") (original emphasis)). Instead of admissible evidence, CBUSO has based its allegation of irreparable harm on unsupported, conclusory statements.

## I.   CBUSO IS NOT LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS

### a.   CBUSO Has Failed to Establish Consumer Confusion

The burden of showing a likelihood of success on the merits is "placed on the party seeking to demonstrate entitlement to the extraordinary remedy of a preliminary injunction . . ." *Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 714 (2007) *opinion amended on reh'g,* <u>508 F.3d 1146</u> (9th Cir.2007). At the outset, CBUSO must carry the burden of demonstrating that TVH's use of "To Kalon Vineyard" is likely to cause confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). CBUSO's failure to demonstrate confusion is thus fatal to its infringement claim.

### 1.   TVH's Primary Brand Mitigates Any Potential Confusion

CBUSO has failed to proffer any evidence demonstrating consumer confusion resulting from TVH's use of the "To Kalon" and "To Kalon Vineyard" marks. In its PI Motion, CBUSO fails to discuss TVH's significant use of its primary, source-identifying mark on the label of the Block 8 Cab: "**THE VINEYARD HOUSE**." It is well-settled that when overlapping terms are used in connection with primary brands, consumers are unlikely to confuse the terms, even for identical goods. *See W.W.W. Pharm. Co v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir.1993) (RIGHT GUARD SPORT STICK not confusingly similar to SPORTSTICK; "when a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened"); *Norm Thompson Outfitters, Inc. v. General Motors, Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (no confusion where distinctive house mark displayed and accused mark used as "tagline"); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (no confusion when registered mark "never appears alone; rather, it is invariably accompanied by a reference to Barbie, which is clearly the 'salient part of the mark indicative of the product's origin.'"); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**PLAINTIFF THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

1240, 1245 (9th Cir. 1979) (similarity of identical marks negated by "dominance of company marks and logos on the pens themselves and on all packaging and promotional material").

### 2. Wine Label Architecture Minimizes Potential Confusion

In the case of wine, one important factor is the so-called "architecture" of the wine label. As wine-label expert Paul Reidl explained,

> Wine labels have a very specific architecture that places the vineyard designation (usually in a smaller font) below the brand name. . . . The label architecture of [TVH]'s wine is totally consistent with wines that are vineyard-designated. This is done to communicate the terroir to the consumer. That is why vinters put a vineyard designation on the label – to tell the consumer the geographic location in which the grapes were grown . . . .

Judd Decl., Ex. 5 (Reidl Rebuttal Report, ¶¶ 19-20, at pp. 9-10).

The focus of a consumer confusion analysis must be on the entire product and all of its markings, together with the product's label, trade dress, and packaging, as opposed to narrowly limiting the focus to selected portions of the product. *Lindy Pen Co.*, 725 F.2d at 1245 (similarity "must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase of the [products]"). TVH has sold thousands of bottles of wine successfully under THE VINEYARD HOUSE trademark since 2010. Judd Decl., Exh. 6 (Nickel Depo. Tr., at 15:19-23). The size, location, and visual weight of THE VINEYARD HOUSE mark informs consumers that TVH is the source of the Block 8 Cab and prevents consumers from mistakenly believing that the Block 8 Cab is associated with CBUSO in any way. *See Mattel, Inc.*, 210 F.3d at 1111 ("The appearance of the respective [house] marks, however, negates any similarity."). Furthermore, the placement of "To Kalon Vineyard" at the bottom portion of the Block 8 Cab label communicates to consumers that the term is being used to describe the geographic origin of the wine in the bottle.

### 3. Significant Third-Party Use of "To Kalon Vineyard" Mitigates Potential Confusion

That numerous other Napa Valley wineries also use "To Kalon Vineyard" to describe the geographic origin of the grapes used to make their wines further supports a finding that confusion

is unlikely. For example, another vinter's To Kalon Vineyard-labeled wine reads: "Paul Hobbs, Cabernet Sauvignon, Beckstoffer To Kalon Vineyard, Napa Valley" (see below).

**PAUL HOBBS FRONT LABEL**



**PAUL HOBBS BACK LABEL**



The Paul Hobbs label uses the "To Kalon Vineyard" mark to describe the geographic origin of the grapes used to make the Paul Hobbs wine. The Paul Hobbs label also uses the customary wine label architecture where the primary brand – "PAUL HOBBS" – is in the largest typeface at the top portion of the front label, and where the "To Kalon Vineyard" mark is at the bottom section of the front label, in smaller typeface, where consumers know to look to determine the geographic origin of the wine in the bottle.

### 4.    Block 8 Cab Label Minimizes Potential for Confusion

The TVH Block 8 Cab label follows the form of typical wine labels: The primary brand –
THE VINEYARD HOUSE – is at the top of the label in the largest typeface, and the geographic
origin – "H.W. Crabb's To Kalon Vineyard, Oakville, Napa Valley" – is located at the lower
portion of the label, in much smaller typeface than the TVH house mark. *See* Block 8 Cab Label,
*supra*, at p. 2. Nothing on the Block 8 Cab label – front or back – refers or relates to CBUSO.
Moreover, the back-label of the Block 8 Cab confirms that "To Kalon" describes the geographic
origin of the grapes used to make the wine, and refers to H.W. Crabb as the founder of To Kalon
Vineyard. CBUSO does not dispute these facts. In the PI Motion, however, CBUSO focuses
solely on the "To Kalon Vineyard" designation and improperly ignores the rest of the label.
CBUSO's contention that consumers viewing the Block 8 Cab label – which loudly features **THE
VINEYARD HOUSE** and explains the historic and geographic significance of To Kalon – will
associate TVH's Block 8 Cab with CBUSO, must therefore be disregarded.

### 5.    CBUSO Bases its Assertion of Consumer Confusion on Unfounded Expert Testimony of Questionable Admissibility

The heart of every trademark infringement case is an analysis of how consumers perceive the
use of the contested trademark. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 955 F.2d 1327, 1339-40
(9th Cir. 1992). This evidence typically takes the form of a consumer survey. "Survey evidence or
testimony from actual consumers is the best way to show evidence of actual confusion." *Ross v.
Target Corp.*, No. 07-1147 ODW PLAx, 2008 WL 11336378, at *8 (C.D. Cal. July 7, 2008)
(*citing Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002)). Although
CBUSO had sufficient resources and plenty of time (the TVH Suit was filed March 18, 2019), for
whatever reason CBUSO did not conduct a consumer survey. Such a survey could demonstrate
whether purchasers of ultra-luxury wines understand that "To Kalon Vineyard" describes a
geographic location or causes consumers to believe that CBUSO is somehow associated with
TVH wines.

Instead, CBUSO relies on the testimony of two branding experts, neither of which relies on
any factual evidence to support the conclusion that consumers viewing the TVH label would

perceive every reference to "To Kalon" as a brand. For example, Susan Schwartz McDonald,

Ph.D. states the basis for her opinions as follows:

> It has been my experience, gleaned from speaking with very large numbers of consumers and observing them interpret brand signals, that unless words on a label are unambiguously descriptive, there is a tendency for consumer attributions to tilt in the direction of the brand.

ECF 5-2 (Ghiam Decl., Ex. AA, p.18) Asked in deposition about her experience with wine

consumers, Dr. McDonald was unable to recall any work she had done surveying consumers

about how they perceive wine labels. Dr. McDonald freely admitted that she had NOT talked with

any consumer about the TVH wine labels or any other brand of wine labels. The only foundation

for Dr. McDonald's opinion is that she has watched a lot of people "interpret brand signals" on

undisclosed, non-wine products in undisclosed contexts. Dr. McDonald described the basis for

her opinions in this case as follows:

> Q. . . . Is there any particular data that comes to mind in your professional expertise that you're relying upon or considering in forming the opinions in this case?
>
> MR. BOCZKO: Objection. Vague.
>
> THE WITNESS: I'm struggling with your question because there's so much data that I'm not even sure how to characterize it. It's the data that comes from being exposed to consumers in this process over a course of literally decades and hundreds and hundreds of assignments, of listening to thousands of consumers talk about products and labels and how those things are represented. That's how judgments are formed. So when we talk about data, I have over the years relied on accretional accumulated data as well as interpretation of that data to form precepts and perspectives on what happens when a consumer looks at a label. That's really the genesis of expertise.
>
> BY MR. BALES:
>
> Q. I understand it's the general history, but what I'm asking is, is there any specific project or survey or data set that you're specifically drawing from in order to form your opinions here or is it just the general expertise?
>
> A. It's not one but hundreds, thousands. And, in fact, there would be no one I could really rely on to give you an opinion in this case because it's based on precepts. ***I don't have survey data, I don't have any specific consumer data myself that speaks to the interpretation of these labels***. I've been asked to opine as a

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

marketing expert based on my observations and acquired precepts over literally hundreds and hundreds of engagements.

Q. So is there any engagement that you believe is similar enough to this one that you're drawing specifically from that engagement in order to form your opinions here, or no?

A. I think it would be inappropriate and unrealistic to try to attach the precepts developed over a lifetime of professional work to any one particular engagement or label. These are, I'm just going to describe them as hundreds of snowflakes. When I stand back, I understand what snow looks like.

Q. Is there any particular snowflake from your experience in the alcoholic beverage product industry that you're drawing upon for forming your opinions here?

A. I think it would be actually inappropriate to rely on only one, and so **the answer is no**.

Judd Decl., Exh. 7 (McDonald Depo. Tr., at 91:13-94:5 (emphasis added)).

The other branding expert that CBUSO relies on – David Reibstein, Ph.D. – does not opine directly about how consumers might perceive the TVH wine labels. And while Dr. Reibstein did not address how consumers would perceive the Block 8 Cab label specifically, he generally acknowledged that the trademark "To Kalon Vineyard" had been used to describe a geographic location. Judd Decl., Exh. 8 (Reibstein Depo. Tr. At 64:11-23). But Dr. Reibstein's opinions only address general branding concepts, and even these opinions are highly speculative. For example, Dr. Reibstein states: "Without continuous support, *one would expect* that a brand would gradually lose relevance to consumers. . . .," Judd Decl., Exh. 9 (Reibstein Report, at p. 28 (emphasis added)); *see also*, *id*. ("*It is likely* that the brand lost much of its relevance to the national (and International) base of wine consumers . . .") (emphasis added)). Again, even if such speculative "conclusions" are admissible, they do not establish that consumers view the references on TVH's wine labels to "To Kalon" as a brand, and not as describing geographic origin.

Expert opinions that express theories based on vague, anecdotal observations – like the opinions that Drs. McDonald and Reibstein espouse – are generally inadmissible. *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 897 (C.D. Cal. June 18, 2013) (the plaintiff's failure to proffer evidence of consumer surveys or polls, and its sole reliance on "inadmissible anecdotal evidence" precluded a finding of consumer confusion). CBUSO has thus failed to establish any

consumer confusion arising from TVH's use of "To Kalon Vineyard" on the Block 8 Cab label.

### b.   The *Sleekcraft* Factors Have Limited Applicability to This Case

It is axiomatic that the *Sleekcraft* factors apply only to a comparison of trademarks. When a mark is used descriptively – that is, **not** as a trademark – the *Sleekcraft* analysis does not apply. *See Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) ("In the present case, the eight-factor *Sleekcraft* test is not particularly apt. This is not surprising as the *Sleekcraft* test was developed for a different problem – *i.e.*, for analyzing whether two competing brands' *marks* are sufficiently similar to cause consumer confusion." (original emphasis)).

While CBUSO correctly identifies the *Sleekcraft* factors, its application of them is misleading, because it is based on the false premise that consumers would view TVH's use of "To Kalon Vineyard" as a primary brand. TVH disputes this assertion, which in any event is nothing more than Dr. McDonald's unfounded speculation.

Despite the limited applicability of the *Sleekcraft* factors to this case, and beyond CBUSO's failure to establish confusion, CBUSO's *Sleekcraft* analysis misses the mark for the following reasons:

**Marketing Channels**: the parties do **not** use the same marketing channels: TVH has offered to sell the Block 8 Cab only to those consumers who took delivery of the TVH Wine Club's annual allocation in December 2019. Ash Decl., ¶ 2. CBUSO obviously does not sell any RMW wine this way. Accordingly, consumers know that TVH – **not** CBUSO – is the source of Block 8 Cab. TVH has not offered the Block 8 Cab for sale through any "three-tier" distribution channels. *Id.*

**Strength of Mark**: "To Kalon" may be a far weaker mark than CBUSO asserts. CBUSO bases its claim of mark strength on the assertion that "To Kalon" is a "fanciful" mark, because the "phrase was not known (and certainly not in "common use") among wine consumers when [CBUSO] adopted it in the mid-1980s." ECF 5-1, p. 19 (Complaint at 13:14-16). TVH has established, however, that "To Kalon" has been used continuously – both before and after the mid-1980s – to describe the geographic location of "To Kalon Vineyard." Moreover, CBUSO has admitted in the License Agreement that the fair use doctrine provides grape growers and vintners

BUCHALTER
A Professional Corporation
San Francisco

legal rights to use the "To Kalon" marks "████████████████████████████ ██████." Judd Decl. Exh. 3 (License Agreement). "Use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073, 1088 (9th Cir.2005) (*citing Miss World, supra,* 856 F.2d at 1449);*Quality Semiconductor, Inc. v. QLogic Corp.,* C–93–20971 JW, 1994 WL 409483, at *2 (N.D.Cal. May 13, 1994) ("an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods") (*citing General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir.1987)). *See* Appendix 1, attached, showing labels and tasting notes of wines sold by many vintners that use the "To Kalon Vineyard" mark.

**Commercial Strength**: As noted at the outset, CBUSO's refusal to acknowledge in this lawsuit that "To Kalon" and "To Kalon Vineyard" are geographically descriptive distorts reality. In CBUSO's view, the only meaning attributable to "To Kalon" is as a "brand." Thus, CBUSO misleads the court by casting the opinion of TVH expert Doug Frost in brand-equity terms: When Mr. Frost discussed the recognizability and value of "To Kalon," he was stating his view that being able to accurately describe the geographic and historical significance of owning a portion of the historic "To Kalon Vineyard" has value. Mr. Frost did not opine (and has no basis to offer an opinion) as to whether CBUSO's efforts to build the "To Kalon" brand have effected the value of being part of Crabb's historical legacy. Mr. Frost opined that "To Kalon Vineyard" is geographically descriptive of a location in the Oakville area of Napa Valley where outstanding wine grapes are known to grow, which distinguishes a To Kalon Vineyard-labeled wine and explains consumers' willingness to pay more for wine made from To Kalon Vineyard-sourced grapes.

**Whether Exercising "Care" Avoids Confusion**: CBUSO's *Sleekcraft* analysis is based on an inconsistent view of wine consumers. On the one hand, CBUSO asserts that people are willing to pay hundreds of dollars for RMW's "ultra premium" wines because such consumers are sophisticated enough to know CBUSO's brands and wine quality. ECF 5-1 at 15. On the other hand, CBUSO argues that "the average consumer does not exercise care when purchasing [wine]." *Id.* at 16. As the court is well-aware, however, the *Stark* case that CBUSO cited as

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

support for this point pertained to wines priced at less than $45 per bottle. *See Stark*, 907 F. Supp.2d at 1046.

**TVH's Alleged Intent**: CBUSO's assertion that TVH "inten[ds] to derive benefit from [CBUSO]'s use of To Kalon" is unfounded speculation. TVH uses THE VINEYARD HOUSE as the primary product brand and the "To Kalon Vineyard" mark – located on the bottom portion of the Block 8 Cab label – to accurately describe the geographic origin of the grapes that the Block 8 Cab is made from as "H.W. Crabb's To Kalon Vineyard." The use of a registered mark to accurately describe a product's geographic origin is not an improper intent to derive benefit from the use of another's mark. *See, e.g.*, *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528 (1924) ("The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong . . . .").

Moreover, TVH's Block 8 Cab –offered for sale for less than a month to a small population of TVH wine club members – has not caused any instances of actual confusion.

According to CBUSO, "the conclusion is inescapable that if two parties use the same vineyard designation for the same type of wine produced in the same geographic area, consumers are likely to believe there is some connection between the two." That isn't trademark confusion, however: it is the inevitable consequence of adopting a trademark that has been used continuously over more than 100 years to identify a geographic location where exceptional wine grapes are cultivated. It is beyond dispute that parties are always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark, and that anyone who adopts a descriptive term as a mark assumes the risk that others will use the mark descriptively.

CBUSO's analysis of the *Sleekcraft* factors does not support a finding of likelihood of confusion in this case.

c.     **CBUSO's Discussion of PTO Examining Attorney "Decisions" and TVH Representations About Block 8 Cab Sales Have No Legal Significance**

CBUSO devotes pages of its PI Motion to discuss inconsistent statements by TVH regarding the sale of its wines. For example, CBUSO notes that "just last month, [TVH] confirmed to this Court and to [CBUSO] that it had not yet begun selling wine with the name TO

**PLAINTIFF THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

1    KALON—it was waiting for the Court to rule. . . ." ECF 5-1, at p. 7-8. That TVH changed course

2    has no legal relevance to CBUSO's request for a preliminary injunction. The only purpose such

3    rhetoric could achieve is to impugn the integrity of TVH, its counsel, and its owner.

4         Moreover, contrary to CBUSO's assertion, TVH's decision to file a declaratory relief

5    action cannot be deemed an admission of liability for infringement. *See*, *e.g.*, *Roots Ready Made*

6    *Garments v. Gap Inc*., 2008 U.S. Dist. LEXIS 9191 at *16-*17 (N.D. Cal. January 28, 2008)

7    (decision to file trademark suit is absolutely immune from tort liability because "any publication

8    or broadcast made in any judicial proceeding is privileged"). To the contrary, the very nature of

9    TVH's declaratory judgment claim is grounded in TVH's good-faith belief that it has the right to

10   use "To Kalon" to describe the geographic origin of its wines and the history of its land. While

11   TVH's decision to offer the Block 8 Cab for sale might make for damning soundbites, they have

12   no bearing on the PI Motion. Such soundbites are certainly not probative of whether displaying

13   "To Kalon Vineyard" on the Block 8 Cab label is likely to cause confusion, or any other relevant

14   issue.

15        In the same way, CBUSO's discussion of the refusal of a USPTO Examining Attorney (an

16   "EA") to register "To Kalon Valley Vineyard" as a TVH trademark in light of CBUSO's

17   registrations for "To Kalon" and "To Kalon Vineyard" has no legal significance here. It is well-

18   settled that the academic, "ivory-tower" actions of an EA, have little applicability to real world

19   infringement analyses. *See*, *e.g.*, *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794,

20   802 (9th Cir. 1970) (determinations by trademark examiners are not binding upon federal courts);

21   *Butler v. Hotel California, Inc.*, 106 F. Supp. 3d 899, 907 (N.D. Ohio 2015) ("the trademark

22   office emphasizes an objective comparison of marks *sui generis*, rather than the type of

23   contextual analysis prescribed" for infringement).

24        Moreover, the EA who examined the "To Kalon Valley Vineyard" mark's application just

25   compared the submitted word marks. The EA did not undertake an infringement analysis, which

26   necessitates analyzing the context of the use made by both parties of the marks at issue. *See Lindy*

27   *Pen Co.*, 725 F.2d at 1245 (similarity "must be considered in light of the way the marks are

28   encountered in the marketplace and the circumstances surrounding the purchase of the

[products].”). In short, the EA's actions regarding the proposed "To Kalon Valley Vineyard" mark are irrelevant, as the focus in this proceeding is whether CBUSO can meet its burden to demonstrate a likelihood of confusion.

## II.     TVH DOES NOT INFRINGE CBUSO'S MARK – THE FAIR USE DOCTRINE ALLOWS TVH TO ACCURATELY DESCRIBE GEOGRAPHIC ORIGIN

### a.     "To Kalon Vineyard" is Geographically Descriptive

In the TVH Suit, TVH established that "To Kalon Vineyard" has long identified a specific place in the Oakville area of Napa Valley that is famous as a source of exceptional wine grapes. Judd Decl., Exh. 10. ***CBUSO does not deny or meaningfully discuss this fact***. TVH has proffered unchallenged evidence showing that in 1961 Robert Mondavi – in his role as Vice President and General Manager of C. Mondavi & Sons, owner of the Krug Winery – announced the acquisition of a portion of the To Kalon Vineyard property, stating "the property is 'one of the best premium wine-growing locations in all of California.' . . . The huge estate, once known as Tokalon . . . was first planted by Hamilton Walker Crabb in the 1860s. . . ." Judd Decl., Ex. 11. Eight years later, in his role as founder and president of CBUSO's predecessor, Robert Mondavi Winery ("RMW"),[1] Robert Mondavi announced that RMW had purchased "250 acres of the adjoining Tokalon Vineyards." Judd Decl., Ex. 1. Some 25 years later, in 1995 Mr. Mondavi recounted that in settling his lawsuit against, C. Mondavi & Sons, Mr. Mondavi

> insisted that [he] get the Tokalon vineyard because [he] knew it was one of the best vineyards in the valley and was considered the best vineyard even a hundred years ago. [He] knew the value of that piece of property and [he] insisted that [he] keep it.

Judd Decl., Exh. 2.

### b.     The License Agreement Between Beckstoffer and RMW Demonstrates That "To Kalon" and "To Kalon Vineyard" Geographically and Historically Descriptive

More recently, the 2004 License Agreement between Beckstoffer Vineyards ("Beckstoffer") and RMW (the "License Agreement") definitively confirmed the geographic and historical significance of "To Kalon," and that non-CBUSO vintners can use "To Kalon Vineyard" to

---

[1] In 2004, CBUSO acquired the Robert Mondavi Winery and all its assets.

describe the origin of wines made with grapes grown at To Kalon. Judd Dec., Ex. 3.[2] While

CBUSO mentions the License Agreement in the PI Motion, it only attaches a few, mostly

redacted pages, which effectively concealed RMW's admission that "To Kalon Vineyard"

describes a particular place in Napa Valley. *See* ECF 5-3, at pp. 553-54 (Ghiam Decl., Exh. AE).

Like TVH, Beckstoffer owns vineyard property that H.W. Crabb once owned and grew grapes

on. Like TVH, Beckstoffer wanted to inform consumers by stating on bottle labels and elsewhere

that grapes grown on the historic To Kalon Vineyard property that H.W. Crabb owned and

farmed were the source of the wine in the bottle. Beckstoffer sued RMW to establish its right to

do so, and RMW and Beckstoffer entered into the License Agreement to resolve that suit.

The License Agreement grants Beckstoffer and its vintner customers the right to use "To

Kalon" and "To Kalon Vineyard" on the front-labels of wine that originates from grapes grown

on the portion of H.W. Crabb's To Kalon Vineyard that Beckstoffer owns. Moreover, RMW

repeatedly admits in the License Agreement that "To Kalon" and "To Kalon Vineyard" have

geographic significance, and that independent of any rights granted in the License Agreement

Beckstoffer has the right to describe grapes or wines by their geographic origin:



- RMW "                  ." (License Agreement, ¶ 1 (BV 0061))

- "                  ." (License Agreement, Par. 6 (BV 0062))

- RMW "                " (License Agreement, Par. 6 (BV 0063))

- "                  ."
(Exhibit C – Press Release (BV0068))

Judd Decl., Exh. 3.

---

[2] TVH did not discuss the License Agreement in its own Motion for Preliminary Injunction because CBUSO did not produce it until December 11, 2019, the same day TVH filed its Reply Brief. Judd Decl., ¶ 4.

The License Agreement thus establishes CBUSO's unqualified admission that (i) "To Kalon Vineyard" describes a specific geographic place in Napa County, and (ii) wine bearing the term "To Kalon" or "To Kalon Vineyard" on its front label originates from this geographic place. In 2017, Beckstoffer sub-licensed the use of the "To Kalon" and "To Kalon Vineyard" marks to 21 different vintners, who each use the To Kalon marks descriptively to identify the geographic origin of the grapes used to produce their respective wines. Judd Decl., Exh. 4; *see* Appendix 1 (attached).

Like Beckstoffer and CBUSO, TVH uses grapes grown at the historic "To Kalon Vineyard" to make the Block 8 Cab, and seeks to describe accurately the geographic origin of the grapes used to make the Block 8 Cab. TMV has the right to do so under the "fair use" doctrine, without regard to CBUSO's trademark. 15 U.S.C. § 1115(b)(4).

### c.   TVH Is Likely To Succeed on the Merits of the Fair Use Defense

To prevail on its assertion of classic fair use, TVH must show it has: (a) not used "To Kalon" or "To Kalon Vineyard" as a trademark or service mark; (b) used "To Kalon" and "To Kalon Vineyard" fairly and in good faith; and (3) used "To Kalon" or "To Kalon Vineyard" to describe its own goods. *Cairns v. Franklin Mint*, 292 F.3d 1139, 1151 (9th Cir. 2002); *see also*, *Fortune Dynamics, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010) ("classic fair use . . . involves a defendant's use of a descriptive term in its primary, descriptive sense."); *In re Dual-Deck Video Cassett Recorder Antitrust Litigation*, 11 F.3d 1460, 1467 (9th Cir. 1993) (the defendant used "VCR-2" to designate the jack to which a second VCR could be attached, therefore no infringement of the plaintiff's mark for a two-deck videocassette recorder, "VCR-2").[3]

The Block 8 Cab label demonstrates that TVH has used "To-Kalon Vineyard" on the front label as a vineyard designation – a non-trademark use – to identify the geographic origin of the grapes grown on TVH's portion of the historic Hamilton Crabb To Kalon Vineyard. *See* Block 8 Cab Label, *supra*, p. 2. "The requirement of 'good faith' has seldom been litigated and, when

---

[3] Given that the heart of the TVH Suit is its fair use claim, it is remarkable that CBUSO did not address fair use in the PI Motion moving papers. CBUSO should not be allowed to introduce new evidence on Reply and thereby deprive TVH of the opportunity to respond.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

litigated, has been viewed more from the premise of what constitutes bad faith." *Hershy the Tin Man v. Avon Prods., Inc.*, 2001 U.S. Dist. LEXIS 23097, *1-*2 (D. Mt., June 6, 2001) ("bad faith has been inferred from (1) defendant's intentional breach of an agreement not to use the disputed mark; or (2) defendant's use with the intent to 'trade upon and dilute the good will' represented by the plaintiff's mark." *Citing* McCarthy at § 11.49 p. 11-97 *citing Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002 (3rd Cir. 1991) *cert. denied*, 502 U.S. 909 (1991)). TVH has not breached any agreement not to use the "To Kalon Vineyard" mark, and TVH's intent in using "To Kalon Vineyard" is and always has been to inform consumers of the geographic and historical origin of the Block 8 Cab. TVH has used the "To Kalon" and "To Kalon Vineyard" marks only to describe its Block 8 Cab. TVH's use of the "To Kalon" and "To Kalon Vineyard" trademarks thus comprises a classic fair use.

## III.   CBUSO HAS FAILED TO DEMONSTRATE IRREPARABLE HARM

To obtain injunctive relief, CBUSO must demonstrate that it is likely to suffer irreparable harm if an injunction does not issue. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (original italics). In addition to demonstrating that an award of money damages will not make it whole, CBUSO must also demonstrate that the failure to issue an injunction will cause harm that cannot be cured. *Mytee Prod., Inc. v. Shop Vac Corp.*, No. 13-1610 BTM BGS, 2013 WL 5945060, at *7 (S.D. Cal. Nov. 4, 2013) (denying preliminary injunction, finding that the "[p]laintiff has not shown sufficient facts to meet its burden of proof and, in particular, [the p]laintiff has failed to establish that [the d]efendant is causing irreparable harm that cannot be cured by money damages.").

### a.   CBUSO Fails to Support the Allegation of Irreparable Harm With Admissible Evidence

To meet the irreparable harm requirement, CBUSO must "proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (2013) (hereafter, "*Herb Reed*"). Conclusory or speculative allegations are not sufficient. *Id*. (pronouncements "grounded in platitudes rather than evidence" are insufficient); *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("[s]peculative

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**PLAINTIFF THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction . . . . [a] plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (original italics). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Blackberry Ltd. v. Typo Prods. LLC*, 2014 U.S. Dist. LEXIS 42702, *35 (N.D. Cal. Mar. 28, 2014).

Plaintiffs that have carried the irreparable harm burden typically proffer evidence of concrete harm, like price erosion, loss of market share, or loss of a market-leading position. *See, e.g.*, *Lifescan, Inc. v. Shasta Techs., LLC*, 933 F.Supp.2d 1243, 1261 (2013) (in patent case, the defendants' pricing structure – a sale price of roughly half of the price plaintiff charged – would "cause price erosion because Plaintiffs would likely need to cut the prices of their strips in order to compete, making it extremely difficult to raise prices back to the earlier level if and when [the defendants' products] are removed from the market").

Apparently unable to demonstrate any concrete harm, CBUSO has instead seized on *Herb Reed's* acknowledgement that "[e]vidence of **loss of control over business reputation** and damage to goodwill could constitute irreparable harm." 736 F.3d at 1250 (emphasis added). A leading treatise explains what loss of control over business reputation means in the context of irreparable harm, as follows:

> If it is likely that confused persons will ***mistakenly attribute to plaintiff defects or negative impressions they have of defendant's goods or services, then the plaintiff's reputation is at risk***. This threatened loss of reputation and good will cannot adequately be compensated for in dollars and cents after the harm has occurred

J. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §30:47.50 (5th ed. 2019) (emphasis added). CBUSO must therefore show a risk that "defects or negative impressions" of the Block 8 Cab will be attributed to RMW's To Kalon Vineyard-labeled wines. Likelihood of irreparable harm cannot be established, as CBUSO asserts, however, because the Block 8 Cab is "different" than RMW's To Kalon Vineyard-labeled wines. Rather, to show loss of control over its business reputation that rises to the level of irreparable harm, CBUSO would have to proffer evidence showing that the Block 8 Cab has ***defects*** or will cause ***negative impressions*** that consumers are likely to attribute to RMW's To Kalon Vineyard-labeled wines.

17

1  CBUSO has not made any such assertions.[4]

2          **a.**      **Flavor Difference Between TVH and RMW Wines Does Not Cause Harm**

3      Instead, CBUSO asserts that because the Block 8 Cab will taste different than RMW's To

4  Kalon Vineyard-labeled wines "risks the loss of future sales and diminishes and harms the

5  reputation of the brand." ECH 5-1 (PI Mtn., at p. 20, ll. 14-15). CBUSO cites the declaration of

6  John Seethoff to support of this assertion, as follows:

7          Because The Vineyard House wines have a different flavor profile[]
8          than [CBUSO]'s TO KALON wines, the release of the "Block 8"
           wine would damage [CBUSO] and its TO KALON brand even if
9          The Vineyard House's wine was well received. Consumers who
           purchase the "Block 8" wine will begin to associate the TO
10         KALON VINEYARD brand with a flavor profile not found in
           [CBUSO]'s wines. This confusion in the minds of consumers as to
11         what a TO KALON VINEYARD wine is supposed to "taste like,"
           will cause irreparable harm, especially among consumers who have
12         experienced both parties' TO KALON VINEYARD wines. And if
           those flavor differences were to be publicized, the injury would be
13         even greater because then consumers who are merely *researching*
           "TO KALON" wine would likely be exposed to different flavor
14         narratives and not know what a "real" TO KALON VINEYARD
           wine represents. And the injury to Mondavi's TO KALON brand
15         would be all the greater if, as is feared, the TVH wines are not as
           well received, or reviewed.

16 ECH 5-6 (Seethoff Dec., ¶ 17, at pp. 6-7 (original italics)). The. Seethoff declaration is thus the

17 kind of conclusory and speculative allegations that preclude a finding of irreparable harm. Mr.

18 Seethoff has "not yet tasted The Vineyard House's 'Block 8' wine," and his entire discussion of

19 different flavor profiles is speculative. ECH 5-6 (Seethoff Dec., ¶ 14, at p. 4). Moreover,

20 Seethoff's expressed bias substantially undermines the credibility of his opinion: "I also believe

21 that consumers would regard [CBUSO]'s TO-KALON wines as superior to The Vineyard

22 [4] CBUSO cites *Stark v. Diageo Chateau & Estate Wines Co.*, 97 F.Supp.2d 1042, 1066 (2012), to
23 support the concept that potential loss of goodwill or loss of control over one's reputation may
   constitute irreparable harm in the face of consumer confusion. In the *Stark* case, however, the
24 potential for reputational harm or loss of goodwill was a function of the vast quality disparity
   between the plaintiff's and the defendant's respective products. The plaintiff's product was an
25 ultra-premium, handcrafted Syrah varietal wine that cost $28-44 per bottle, whereas the allegedly
   infringing products were non-varietal "white" and "red" wines, which retailed for between $10.99
26 and $13.99 per bottle. Moreover, the marks at issue were the primary brand for both products: the
   plaintiff's primary brand was his name, "Stark," and the allegedly infringing product's primary
27 brand was "Stark Raving." In the instant case, of course, the TVH Block 8 Cab and RMW's To
   Kalon Vineyard-labeled wines are sold at roughly the same price point. Moreover, the To Kalon
28 Vineyard mark is geographically descriptive of the location of the vineyards where the grapes
   were grown and is not used by CBUSO as a primary brand.

House's "Block 8" wine, even though both certainly qualify as "premium" wines." *Id*. (¶ 16)[5]

Furthermore, while CBUSO has gone on at length to prove the axiom that different wines have

different flavor profiles due to a many factors, it proffers no evidence as to what a "TO KALON

VINEYARD wine is supposed to 'taste like.'" *Id*. *Third*, different reviewers of RMW's To

Kalon-labeled wines describe significantly different flavor profiles of the same RMW wine. Frost

Decl., ¶ 12.h. This is because flavor is highly subjective, as are the words that different reviewers

choose to describe flavor. *Fourth*, at least twenty-one (21) different vintners currently sell To

Kalon Vineyard-labeled wine that, according to the same reviewers, have very different flavor

profiles. Frost Decl., ¶ 12.i. Such a wide range of flavor profiles attributed to To Kalon Vineyard-

labeled wines is strong evidence that CBUSO would suffer little, if any, harm by adding a twenty-

second flavor profile into the mix. *Finally*, CBUSO has proffered no evidence that it has any

ability to control the flavor profiles of wines made and sold by twenty-one other vintners whose

wine is sourced from To Kalon Vineyard grapes (it has none). Frost Decl., ¶ 12.i.c. Post-*Herb*

*Reed* cases like *OTR Wheel Eng'g, Inc. v. West Worldwide Servs*., 602 Fed.Appx. 669 (2015)

provide some guidance as to when harm to business reputation or goodwill injury might be

irreparable. *OTR* involved automotive tires that looked identical to the plaintiff's product, but

were allegedly of inferior quality. The *OTR* court first noted that reputational harm was not

implicated because the plaintiff had proffered no evidence supporting the assertion that the

defendant's "lookalike tire was an inferior product." *Id*. CBUSO does not assert that the Block 8

Cab is of inferior quality when compared with the RMW To Kalon Vineyard-labeled wines.

Indeed, CBUSO admits that "quality . . . in the case of ultra-premium wines is highly subjective,"

ECH 5-1 (P.I Mtn., at p. 20 ll. 25-26). The *OTR* court held that a finding of "goodwill injury" was

supported by evidence in the record, however, because the plaintiff's major customer – Genie

Industries – was selling the defendant's allegedly infringing tire, which caused OTR "to

---

[5] CBUSO insinuates that TVH's wines are inferior to RMW's. But any comparison between the scores or tasting notes between two wines that do not originate from To Kalon Vineyard – in this case, TVH's 2010 Cabernet Sauvignon and RMW's 2010 Cabernet Reserve – has no legal relevance to any issue in this lawsuit. The only purpose such an attack could serve is to denigrate TVH's reputation for producing quality wine. In any event, comparing the quality of the initial vintage by a small-scale artisanal vintner like TVH with the 44th or 45th vintage of a volume producer like RMW is meaningless.

1  admonish" Genie,

2      and eventually to question Genie whether it had leaked OTR's
3      confidential information to [the defendant]. From this, it was
    reasonable to conclude that OTR would likely suffer a
4      nonquantifiable injury to the goodwill it had created with its
    customer, and that an injunction preventing [the defendant] from
5      selling the allegedly infringing tires to Genie and other OTR
    customers would forestall further deterioration in its business
    relationships.
6
602 Fed.Appx. at 672. CBUSO has not proffered any evidence that even suggests that the sale of
7
TVH's Block 8 wine has caused (or is even likely to cause) a deterioration in any of CBUSO's
8
business relationships.
9
    Even if we assume that TVH's Block 8 Cab has a flavor profile markedly different from the
10
flavor profiles associated with RMW's To Kalon Vineyard-labeled wines, however, CBUSO has
11
not demonstrated how any such flavor differences might constitute irreparable harm. According
12
to CBUSO, the inability to control the flavor profile of TVH's Block 8 wine is itself irreparable
13
harm: "'Trademarks serve as the identity of their owners and in them resides the reputation and
14
good will of their owners. Thus, if another person infringes the marks, that person borrows the
15
owner's reputation, whose quality no longer lies within the owners' control.'" ECH 5-1 (PI Mtn.,
16
at p. 20 ll. 15-19) (*quoting CytoSport, Inc. v. Vital Pharm., Inc*. 617 F.Supp.2d 1051, 1080 (E.D.
17
Cal. 2009)).[6] Such an argument might make sense if "To Kalon Vineyard" was the primary brand
18
of RMW's To Kalon Vineyard-labeled wines, rather than being descriptive of origin – in this case
19
describing a vineyard named "To Kalon." When a mark that has geographic significance is used
20
to communicate product origin, it stands to reason that the business reputation of the
21
geographically descriptive mark's owner is effected. This is particularly true in the case of wine,
22
which consumers associate with the geographic location where the grapes were grown. Judd
23
Decl., Exh. 5 (Reidl Report, ¶ 19). Plaintiff has failed to establish irreparable harm if an
24
injunction does not issue.
25

26  _____

27  [6] CBUSO's reliance on the *CytoSport* case is misguided because that case, which pre-dates *Herb Reed*, relied on a presumption of irreparable harm because plaintiff demonstrated a likelihood of confusion. 617 F.Supp. at 1081 (the defendant's "ongoing use of its [product] mark and trade
28  dress is likely to confuse consumers thereby causing [the plaintiff] irreparable harm").

1

## IV.     THE EQUITIES DO NOT TIP SHARPLY IN CBUSO'S FAVOR

2

If the court were to find that CBUSO is likely to succeed on the merits and that it will likely

3

experience irreparable harm in the absence of preliminary relief, the injunction should issue only

4

if the balance of the equities tips sharply in CBUSO's favor and if an injunction is in the public

5

interest. CBUSO has failed to show that any injury resulting from a difference in flavor profiles

6

between the TVH Block 8 Cab and RMW's To Kalon Vineyard-labeled wines would be

7

significant, given the wide flavor profile variance that already exists among the score of vintners

8

that sell To Kalon Vineyard-labeled wine. *See* Frost Decl., ¶ 12. Adding another flavor profile to

9

such a sea of wine flavors will have minimal effect, if any, on the value or reputation of RMW's

10

To Kalon Vineyard-labeled wines. On the other hand, preventing TVH from accurately

11

describing the geographic origin of the Block 8 Cab would interfere with the strong public policy

12

in consumers' ability to obtaining accurate information about the origin of the products they are

13

considering buying.

14

## CONCLUSION

15

CBUSO has failed to proffer evidence that establishes a likelihood of confusion arising

16

from TVH's use of the "To Kalon Vineyard" mark on the Block 8 Cab label. On that basis alone

17

the court should deny the PI Motion. Furthermore, TVH is likely to prevail on its fair use defense,

18

which is another reason why the PI Motion should be denied. Finally, CBUSO has failed to

19

demonstrate a likelihood that it will be irreparably harmed if the preliminary injunction does not

20

issue. For these reasons, the PI Motion should be denied.

21

DATED:  January 24, 2020                    BUCHALTER
                                            A Professional Corporation

22

23

24

By:      /s/ Jeffrey M. Judd
                                            JEFFREY M. JUDD

25

Attorneys for Plaintiff
                                            THE VINEYARD HOUSE, LLC

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 39297293v1

1
2
3
4
5
6
7
8
9
10
11
12
# APPENDIX I
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**PLAINTIFF THE VINEYARD HOUSE, LLC'S OPPOSITION TO MOTION FOR PRELIM. INJUNCTION**

BN 39297293v1